William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
488 Madison Avenue, Suite 1100
New York, New York 10022
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VICTOR MARTINEZ, ESMELIN GONZAGA,        :
JUAN RAMIREZ, Individually and on          :        ECF
Behalf of All Other Persons Similarly Situated,   :
                                                          :        13 Civ. 2644 (LGS)
                                   Plaintiffs,            :
                                                          :
              -against-                                 :
                                                          :
MIDTOWN CLEANER, INC., MIDTOWN          :
CLEANERS II, INC., BYUNG Y. KIM,           :
and JOHN DOES #1-10                          :
                                                          :
                                   Defendants.       :
------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN
### SUPPORT OF MOTION
### FOR APPROVAL OF COLLECTIVE ACTION NOTICE

Dated: New York, New York
       July 2, 2013

                        LAW OFFICE OF WILLIAM COUDERT RAND
                        William Coudert Rand, Esq.
                        *Attorney for Plaintiff*, Individually,
                        and on Behalf of All Other Persons Similarly Situated
                        488 Madison Avenue, Suite 1100
                        New York, New York 10022
                        Tel: (212) 286-1425

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT………………………………………...…    1

I.      INTRODUCTION…………………………………………………..    1

II.     ARGUMENT………………………………………………………..    3

        A.      Collective Actions under the FLSA…………………………    3

        B.      The Factual Nexus is Established in this Case………………    5

        C.      The Collective Action Notice……………………………    14

        D.      Defendants Should Disclose the Names and Last Known
                Addresses and Email Addresses of Prospective Plaintiffs
                and Should Post the Notice Conspicuously…………………    15

        E.      The Notice Should Cover Employees Who Worked Over
                the Past Six (6) Years Because the FLSA Three Year
                Statute of Limitations Should be Equitably Tolled by
                Defendants' Failure to Post Notice and Because Courts
                Apply Six Year Notice Period to Reflect the Discovery
                Purposes of the Notice Related to the Underlying New
                York State Class Action Claims Which are Governed by
                a Six (6) Year Statute of Limitations…..................................    17

III.    CONCLUSION……………………………………………............    19

TABLE OF AUTHORITIES

CASES                                                                                    Page

Alonso v. Uncle Jack's Steakhouse, Inc.,
     648 F. Supp. 2d 484 (S.D.N.Y. 2009)…………………………………    4

Atkins v. General Motors Corp.,
     701 F.2d 1124 (5th Cir. 1983)…………………………………………    15

Baba v. Grand Central Partnership, Inc.,
     2000 WL 1808971, 2000 U.S. Dist. LEXIS 17876
     (S.D.N.Y. Dec. 8, 2000)…………………………………………………    17

Bonilla v. Las Vegas Cigar Co.,
     61 F. Supp. 2d 1129 (D. Nev. 1999)……………………………………    15

Braunstein v. Eastern Photographic Laboratories, Inc.
     600 F. 335 (2d Cir. 1979)………………………………………………    15

Cano v. Four M Food Corp.,
     2009 U.S. Dist. LEXIS 7780
     (E.D.N.Y. Feb. 3, 2009)…………………………………………………    19

Cerbone v. Int'l Ladies Garment Workers' Union,
     768 F.2d 45 (2d Cir. 1985)………………………………………………    1

Cook v. United States,
     109 F.R.D. 81 (E.D.N.Y. 1985)…………………………………………    17

Delaney v. Geisha NYC, LLC,
     261 F.R.D. 55 (S.D.N.Y. 2009)…………………………………………    5

Does I thru XXIII v. Advanced Textile Corp.,
     214 F.3d 1058 (9th Cir. 2000)…………………………………………    16

Enriquez v. Cherry Hill Market Corp.,
     2012 U.S. Dist. LEXIS 17036
     (E.D.N.Y. Feb. 10, 2012)………………………………………………    4-5

Gjurovich v. Emmanuel's Marketplace, Inc.,
     282 F. Supp. 2d 101 (S.D.N.Y. 2003)…………………………………    3-4, 15

Guzman v. VLM, Inc.,
     2007 U.S. Dist. LEXIS 75817
     (E.D.N.Y. March 2, 2008)………………………………………………    4, 19

Harrington v. Educ. Mgmt. Corp.,
2002 WL 1343753, 2002 U.S. Dist. LEXIS 8823
(S.D.N.Y. June 19, 2002)…………………………………………………   19

Hoffman v. Sbarro, Inc.,
982 F. Supp. 249 (S.D.N.Y. 1997)...…………………………....……   3-4, 15-17

Hoffman-La Roche, Inc. v. Sperling,
493 U.S. 165 (1989)…………………………………………………..   15-17

Iglesia-Mendoza v. La Belle Farm, Inc.,
239 F.R.D. 363 (S.D.N.Y. 2007)………………………………………   4, 17

Kamens v. Summit Stainless, Inc.,
586 F. Supp. 324 (E.D.Pa. 1984)………………………………………   17

Masson v. Ecolab,
2005 U.S. Dist. LEXIS 18022
(S.D.N.Y. August 17, 2005)……………………………………………   18

Moung Su Kim v. Kap Sap Kim,
2010 U.S. Dist. LEXIS 722236, WL 2854463
(E.D.N.Y. July 19, 2010)…………………………………………..   17

Partlow v. Jewish Orphans' Home of Southern Cal., Inc.,
645 F.2d 757 (9th Cir. 1981)…………………………………………   15

Realite v. Ark Restaurants Corp.,
2009 U.S. Dist. LEXIS 7780
(E.D.N.Y. Feb. 3, 2009)………………………………………………   18

Schwed v. General Electric Co.,
159 F.R.D. 373 (N.D.N.Y. 1995)……………………………………..   4

Szu v. Tgi Friday's Inc.,
2012 U.S. Dist. LEXIS 163595 (E.D.N.Y. Nov. 5, 2012)……………   5

Trinidad v. Breakaway Courier Systems, Inc.,
2007 WL 103073 (January 12, 2007 S.D.N.Y)………………………..   15

Urresta v. MBJ Cafeteria Corp.,
2011 U.S. Dist. LEXIS 120126 (S.D.N.Y. Oct. 17, 2011)……………..   5

Whitehorn v. Wolfgang's Steakhouse, Inc.,
767 F. Supp. 2d 445 (S.D.N.Y. 2011)…………………………………   17

<u>Wraga v. Marble Lite, Inc.</u>,
    2006 WL 2443554, 2006 U.S. Dist. LEXIS 60457
    (E.D.N.Y. Aug. 22, 2006)…………………………………………………...    18

<u>Young v. Cooper Cameron Corp.</u>,
    229 F.R.D. 50 (S.D.N.Y. 2005)……………………………………    4


STATUTES

Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA")………………    Passim

Fed. R. Civ. P. Rule 23………………………………………………………    5

William C. Rand, Esq. (WR-7685)
LAW OFFICE OF WILLIAM COUDERT RAND
488 Madison Avenue, Suite 1100
New York, New York 10022
Phone: (212) 286-1425; Fax: (646) 688-3078

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
VICTOR MARTINEZ, ESMELIN GONZAGA,   :
and JUAN RAMIREZ, Individually and on   :      ECF
Behalf of All Other Persons Similarly Situated,  :
          :      13 Civ. 2644 (LGS)
          Plaintiffs,   :
          :
      -against-     :
          :
MIDTOWN CLEANER, INC., MIDTOWN   :
CLEANERS II, INC., BYUNG Y. KIM,   :
and JOHN DOES #1-10     :
          :
        Defendants.   :
-----------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiffs VICTOR MARTINEZ, ESMELIN GONZAGA, and JUAN RAMIREZ

("Plaintiffs") on behalf of themselves and on behalf of each and all other persons similarly

situated, by his attorney, submit this memorandum of law in support of his Motion for Approval

of Collective Action Notice (hereafter, the "Motion").

## I.    INTRODUCTION

This is an action seeking minimum wage and overtime pay for delivery persons and/or

cashiers and/or stock clerk employees who were paid on a salary basis and were not paid

minimum wages for all hours worked and/or were not paid time and one half for their work over

forty hours per week, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.

("FLSA")

1

Plaintiffs now move the Court to enter an Order permitting this action to proceed as a collective action, requiring Defendants to disclose the names and last-known addresses of current and former employees who are potential plaintiffs, and to approve the form, content and distribution of Plaintiff's proposed "Notice of Lawsuit and Opportunity to Join" and "Consent to Become Party Plaintiff" (attached as Exhibit A and B, respectively, to the Declaration of William C. Rand, Esq. filed herewith), ensuring that potential plaintiffs will be advised of the pendency of this action and their right to "opt-in" to this case pursuant to FLSA § 216(b).

The Named Plaintiffs were employed by Defendants as delivery persons and/or cashiers and/or stock clerk employees, and were required to work more than 40 hours per week, and were at all times paid a salary, and were not paid minimum wage for all hours worked and were not compensated at time and one half their regular rate of pay for hours worked in excess of forty hour per workweek ("overtime wages").  Upon information and belief, there are at least 10 other delivery persons and 15 other cashiers and/or stock clerk employees employed by Defendants during the last three years, who worked more than forty (40) hours in a workweek, and were not paid for all of their hours worked, and did not receive any overtime wages.  Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a).

Accordingly, the Plaintiffs' collective action class consists of (1) current and former employees of Defendants who were non-exempt employees within the meaning of the FLSA, (2) who were not paid overtime compensation of one and one-half times their regular rate of pay for hours worked in excess of forty (40) per week.

2

## II.     ARGUMENT

### A.     Collective Actions under the FLSA

The FLSA expressly permits the maintenance of collective actions by similarly situated employees for an employer's violation of the provisions requiring payment of minimum wage and overtime compensation.  FLSA § 216(b) provides in pertinent part as follows:

> Any employer who violates the provisions of section 206 [requiring payment of minimum wage] or section 207 [requiring payment of overtime compensation for hours worked in excess of 40 per week] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  . . . An action to recover liability . . . may be maintained against any employer .  .  .  by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.  The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

In order to maintain a collective action under FLSA § 216(b), the named plaintiff must demonstrate that other, potential plaintiffs are "similarly situated."  Gjurovich v. Emmanuel's Marketplace, Inc., 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003). This requirement is satisfied if the named plaintiff demonstrates the existence of a "factual nexus between the [named plaintiff's] situation and the situation of the other current and former [employees]." Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997).  Specifically, the named plaintiff need only make a "modest factual showing sufficient to demonstrate the [the named plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." Sbarro, at 261; see also Gjurovich, 282 F. Supp. 2d at 104.  In the pre-discovery stage whether the plaintiff's burden, of showing that there is a factual nexus between the claims of the individual plaintiff and potential opt-in plaintiffs, has been met is based on the pleadings and any affidavits.

Alonso v. Uncle Jack's Steakhouse, Inc., 648 F. Supp. 2d 484, 487-88 (S.D.N.Y. 2009). The pleadings and affidavits must only sufficiently meet the "minimal" burden of a "modest factual showing" for the court to grant a plaintiff's motion for conditional certification under FLSA. Id. at 488 (citing Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005); Gjurovich 282 F. Supp. 2d at 106). The named plaintiff is not required to prove that potential plaintiffs shared identical positions or performed identical work. Schwed v. General Electric Co., 159 F.R.D. 373, 375 (N.D.N.Y. 1995). "The burden on plaintiffs is not a stringent one, and the Court need only reach a preliminary determination that potential plaintiffs are 'similarly situated.'" Sbarro, 982 F. Supp. at 261.

Furthermore, "courts routinely allow plaintiffs to rely on their own declarations for purposes of conditional certification." Enriquez v. Cherry Hill Market Corp., 2012 U.S. Dist. LEXIS 17036 at *4-5 (E.D.N.Y., Feb. 10, 2012) (citing Iglesia-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) ("Plaintiffs have easily made the modest showing that is required of them at this preliminary stage: they were subjected to certain wage and hour practices at the defendants' workplace and to the best of their knowledge, and on the basis of their observations, their experience was shared by members of the proposed class."); Guzman v. VLM, Inc., 2007 U.S. Dist. LEXIS 75817, 2007 WL 2994278 at *4 (E.D.N.Y. Oct. 11, 2007) ("It is hardly realistic, or consistent with the lenient standards of the notice phase of FLSA litigation, to expect plaintiffs to have any more specific knowledge of how much their coworkers are paid than [allegations of conversations with named individuals in which those individuals claimed not to have been paid overtime]".)). Finally, there is no requirement in this circuit that a certain number of similarly situated employees opt-in before a class is conditionally certified by

a court. <u>Enriquez</u>, 2012 U.S. Dist. LEXIS at *4 (citing <u>Delaney v. Geisha NYC, LLC</u>, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)).

Additionally, Courts in this circuit have approved collective action certifications in similar cases involving food service employees. <u>See Szu v. Tgi Friday's Inc.</u>, 2012 U.S. Dist. LEXIS 163595 at *11 (E.D.N.Y. Nov. 5, 2012) (approving notice to "food service workers" who were not paid overtime wages); <u>Urresta v. MBJ Cafeteria Corp.</u>, 2011 U.S. Dist. LEXIS 120126 (S.D.N.Y. Oct. 17, 2011) (approving notice to food service employees who were not paid overtime).

As demonstrated by the foregoing authority, collective actions under the FLSA are materially different from class actions under Fed. R. Civ. P. 23. Rule 23 requires the proponent of the class action to demonstrate the existence of several factual circumstances, including numerosity of the proposed class, common questions of law or fact, typicality of claims or defenses, and adequate and fair protection of the interests of the class by the representative parties. Fed. R. Civ. P. 23. These circumstances are simply not applicable to collective actions under the FLSA, which requires the named plaintiffs to show only that potential plaintiffs likely exist. As discussed below, the declarations by Plaintiffs submitted herewith clearly and sufficiently make the requisite showing in this case.

### B.   <u>The Factual Nexus is Established in this Case</u>

The declarations of the Named Plaintiffs, Victor Martinez, Esmelin Gonzaga, and Juan Ramirez ("Plaintiffs"), filed contemporaneously herewith, demonstrate that Defendants adopted and adhered to a policy effectively requiring their employees to work in excess of 40 hours per week without paying minimum wages and/or overtime compensation at a rate of time and one-

half, in violation of FLSA § 207.  See Declarations of Martinez, Gonzaga, and Ramirez filed in support of the Motion.

## VICTOR MARTINEZ

Victor Martinez was employed full time by MIDTOWN CLEANERS INC., MIDTOWN CLEANERS II INC., and BYUNG Y. KIM (together "Defendants") as a delivery employee for a number of months from about December 10, 2012 until about April 26, 2013. Martinez Dec. at ¶ 1.  During the time period, Defendants operated dry cleaning stores in Manhattan at 35 Fifth Avenue (32nd Street) and 35 West 38th Street. Martinez Dec. at ¶ 2.

During the time period, Martinez was told that he would be working 7:00 a.m. to 7:00 p.m. Monday through Friday and 8:00 a.m. to 6:00 p.m. on Saturday and would be paid a salary of $400 per week in cash. Martinez Dec. at ¶ 5. During the interview, Martinez asked if he could be paid by check and Defendant Byung Y. Kim said that he would only pay in cash. Martinez Dec. at ¶ 6.

During the time period, Martinez worked for Defendants as a cashier at the store 35 West 38th Street, New York, NY 10018, Monday through Friday from 7:00 a.m. to 7:00 p.m. and Saturday from 8:00 am to 6:00 p.m. Martinez Dec. at ¶ 7. Martinez generally worked approximately 68 per week. He did not sign in and out of the job or use a punch card or scanner to punch in and out or scan in and out of the job. Martinez Dec. at ¶ 8. During the time period, Martinez was paid a salary of $600 per week in cash paid to him after his shift on Saturdays. Martinez Dec. at ¶ 9. During the time period, Defendants did not post any notice indicating that employees had a right to minimum wages and/or overtime. Martinez Dec. at ¶ 18.

During the time period, Martinez was not paid for all of his hours worked, and he was not paid any overtime compensation at rates not less than one and one-half times his regular rate of

pay for hours worked in excess of forty (40) hours per workweek ("overtime wages") in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws. Martinez Dec. at ¶ 11. During the time period, he was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages"). Martinez Dec. at ¶ 13. During the time period, Martinez was not paid an additional hour of pay for day in which he worked a spread of more than 10 hours in a workday ("spread of hours pay"). Martinez Dec. at ¶ 13.

Upon information and belief, Defendant Byung Y. Kim was the owner and manager of Midtown Cleaner, Inc. and Midtown Cleaners II, Inc. Martinez Dec. at ¶ 4. During the time period, Defendants controlled the hours that Martinez worked, how often he worked, and how much he was paid. Martinez Dec. at ¶ 14. During the time period, Defendants, including Byung Y. Kim, either directly or indirectly, hired Martinez, controlled his work schedule and conditions of employment, determined his rate and method of payment, and kept at least some records regarding Martinez's employment. Martinez Dec. at ¶ 15. During the time period, Martinez's job did not require any independent initiative, or a degree of skill to perform his work. Martinez Dec. at ¶ 16.

Upon information and belief, during the last three years, Defendants have employed at least 15 cashiers/stock clerks similar to Martinez and at least 10 delivery persons who all like Martinez were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Martinez Dec. at ¶ 19. Upon information and belief, during the last six years, Defendants have employed at least 30 cashiers/stock clerks similar to Martinez and at least 20 delivery

persons who all like Martinez were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Martinez Dec. at ¶ 20.

During the time period, Martinez was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and my specific pay rate as required by the New York Wage Theft Prevention Act. Martinez has not been given specific notice of this information to sign and has not signed any such notice. Upon information and belief, the other cashier/stock clerk employees and delivery employees also were not given such notice. Martinez Dec. at ¶ 22.

On April 23, 2013, through his lawyer, Martinez filed a complaint against Defendants alleging that they had illegally failed to pay his minimum wages, spread of hours wages and overtime wages in violation of state and federal law. Martinez Dec. at ¶ 23. On April, 25, 2013, Martinez saw that Defendant Byung Y. Kim received a Fedex envelope and when he opened it, Martinez saw that it was the complaint that he had filed in federal court. When Kim received it, he went downstairs and Martinez believes he read the papers then returned and asked him why he had retained a lawyer. Martinez Dec. at ¶ 24. Martinez responded that he should communicate with his lawyer. Then Kim said that they would talk about his lawyer tomorrow. Martinez Dec. at ¶ 25. On April 26, 2013, Defendant Kim did not talk to Martinez all day and then at about 7:00 p.m. he terminated Martinez indicating that business was slow and paid him $335 for his five days of work ending April 26. Martinez Dec. at ¶ 26. Business was not slower than when Martinez started working and had not even slowed down in the weeks preceding April 26, 2013. Martinez Dec. at ¶ 27. Defendant Byung Y. Kim terminated Martinez in retaliation for his filing

a complaint alleging that he was not paid spread of hours, minimum wage and overtime. Martinez Dec. at ¶ 28.

Martinez knows that others like him were not paid overtime at time and one half and were not paid spread of hours pay by Defendants because he frequently heard other similar employees including but not limited to Mike [last name not known] (cashier/stock clerk) and Esmelin Gonzaga (delivery employee), complain that they worked more than 40 hours a week and were not paid overtime and were only paid a weekly salary. Martinez Dec. at ¶ 21.

## ESMELIN GONZAGA

Esmelin Gonzaga was employed full time by MIDTOWN CLEANERS INC., MIDTOWN CLEANERS II INC., and BYUNG Y. KIM (together "Defendants") as a delivery employee for a number of months from about March 19, 2103 until about April 12, 2013. Gonzaga Dec. at ¶ 1.  During the time period, Defendant operated dry cleaning stores in Manhattan on 35 Fifth Avenue (32nd Street) and at 35 West 38th Street. Gonzaga Dec. at ¶ 2.

During the time period, Gonzaga was told that he would be working 7:00 a.m. to 7:00 p.m. Monday through Friday and 8:00 a.m. to 6:00 p.m. on Saturday and would be paid a salary of $450 per week in cash. Gonzaga Dec. at ¶ 5. During the time period, for his first week of employment, Gonzaga worked from 7:00 a.m. to 7:00 p.m., Monday through Friday, and 8:00 a.m. to 6:00 p.m., on Saturday, and was paid $450 in cash on Saturday for his 67 hour workweek. Gonzaga Dec. at ¶ 6. Thereafter, for the remainder of the time period, Gonzaga worked from 7:00 a.m. to 7:00 p.m., Monday through Friday, and was paid $375 in cash on Friday for his 57.5 hour week. Gonzaga Dec. at ¶ 7.

During the time period, Gonzaga worked for Defendants as delivery employee at the store at 35 Fifth Avenue (32nd Street), New York, NY. Gonzaga generally worked approximately

57.5 hours per week, except for his first week of employment in which he worked 67 hours. Gonzaga Dec. at ¶ 10. Gonzaga was generally paid a salary of $375 per week in cash paid for all of his hours worked, except for his first week of employment in which he was paid a salary of $450 in cash. Gonzaga Dec. at ¶ 12. For his first week of employment, Gonzaga was paid an hourly wage of $6.72 per hour ($450 divided by 67). Thereafter, he was paid an hourly wage of $6.52 per hour ($375 divided by 575.). Gonzaga Dec. at ¶ 13. Gonzaga did not sign in and out of the job using a punch-card or scanner to punch in and out or scan in and out of the job. Gonzaga Dec. at ¶ 11. During the time period, Defendant did not post any notice indicating that employees had a right to minimum wages and/or overtime. Gonzaga Dec. at ¶ 21.

During the time period, Gonzaga was not paid for all of his hours worked, and he was not paid any overtime compensation at rates not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per workweek ("overtime wages") in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws. Gonzaga Dec. at ¶ 14. During the time period, he was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages"). Gonzaga Dec. at ¶ 15. During the time period, Gonzaga was not paid an additional hour of pay for day in which he worked a spread of more than 10 hours in a workday ("spread of hours pay"). Gonzaga Dec. at ¶ 16.

Upon information and belief, Defendant Byung Y. Kim was the owner and manager of Midtown Cleaner, Inc. and Midtown Cleaners II, Inc. Gonzaga Dec. at ¶ 4. During the time period, Defendants controlled the hours that Gonzaga worked, how often he worked, and how much he was paid. Gonzaga Dec. at ¶ 17. During the time period, Defendants, including Byung Y. Kim, either directly or indirectly, hired Gonzaga, controlled his work schedule and conditions

of employment, determined his rate and method of payment, and kept at least some records regarding Gonzaga's employment. Gonzaga Dec. at ¶ 18. During the time period, Martinez's job did not require any independent initiative, or a degree of skill to perform his work. Martinez Dec. at ¶ 19.

Upon information and belief, during the last three years, Defendants have employed at least 15 cashiers/stock clerks similar to Gonzaga and at least 10 delivery persons who all like Gonzaga were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Gonzaga Dec. at ¶ 22. Upon information and belief, during the last six years, Defendants have employed at least 30 cashiers/stock clerks similar to Gonzaga and at least 20 delivery persons who all like Gonzaga were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Gonzaga Dec. at ¶ 23.

Gonzaga knows that others like his were not paid overtime at time and one half and were not paid spread of hours pay by Defendants because he frequently heard other similar employees including but not limited to Victor Martinez (delivery employee), complain that they worked more than 40 hours a week and were not paid overtime and were only paid a weekly salary. Gonzaga Dec. at ¶ 24.

During the time period, Gonzaga was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and my specific pay rate as required by the New York Wage

Theft Prevention Act. Gonzaga has not been given specific notice of this information to sign and has not signed any such notice. Upon information and belief, the other cashier/stock clerk employees and delivery employees also were not given such notice. Gonzaga Dec. at ¶ 25.

## JUAN RAMIREZ

Juan Ramirez was employed full time by MIDTOWN CLEANERS INC., MIDTOWN CLEANERS II INC., and BYUNG Y. KIM (together "Defendants") as a delivery employee for a number of months from about December 10, 2012 to the present. Ramirez Dec. at ¶ 1. During the time period, Defendant operated dry cleaning stores in Manhattan on 35 Fifth Avenue (32nd Street) and at 35 West 38th Street. Ramirez Dec. at ¶ 2.

During the time period, Ramirez was told that he would be working 7:00 a.m. to 7:00 p.m. Monday through Friday and 8:00 a.m. to 6:00 p.m. on Saturday and would be paid a salary of $600 per week in cash. Ramirez Dec. at ¶ 5. Ramirez asked to be paid by check and Defendant Byung Y. Kim said that he would only pay with cash. Ramirez Dec. at ¶ 6. During the time period, Ramirez worked from 7:00 a.m. to 7:00 p.m., Monday through Friday, and 8:00 a.m. to 6:00 p.m., on Saturday. Ramirez Dec. at ¶ 7.

During the time period, Ramirez worked for Defendants as a cashier at the store at 35 West 38th Street, New York, NY. Ramirez Dec. at ¶ 7.  Ramirez generally worked approximately 68 hours per week. Ramirez Dec. at ¶ 8. Ramirez was paid a salary of $600 per week in cash after his shift on Saturday. Ramirez Dec. at ¶ 9. Ramirez did not sign in and out of the job using a punch-card or scanner to punch in and out or scan in and out of the job. Ramirez Dec. at ¶ 8. During the time period, Defendant did not post any notice indicating that employees had a right to minimum wages and/or overtime. Ramirez Dec. at ¶ 18.

During the time period, Ramirez was not paid for all of his hours worked, and he was not

paid any overtime compensation at rates not less than one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per workweek ("overtime wages") in violation of the Fair Labor Standards Act (FLSA) and applicable New York Labor Laws. Ramirez Dec. at ¶ 11. During the time period, he was not paid at time and one half his regular rate of pay for hours worked over 40 in a workweek ("overtime wages"). Ramirez Dec. at ¶ 12. During the time period, Ramirez was not paid an additional hour of pay for day in which he worked a spread of more than 10 hours in a workday ("spread of hours pay"). Ramirez Dec. at ¶ 13.

Upon information and belief, Defendant Byung Y. Kim was the owner and manager of Midtown Cleaner, Inc. and Midtown Cleaners II, Inc. Ramirez Dec. at ¶ 4. During the time period, Defendants controlled the hours that Ramirez worked, how often he worked, and how much he was paid. Ramirez Dec. at ¶ 14. During the time period, Defendants, including Byung Y. Kim, either directly or indirectly, hired Ramirez, controlled his work schedule and conditions of employment, determined his rate and method of payment, and kept at least some records regarding Ramirez's employment. Ramirez Dec. at ¶ 15. During the time period, Martinez's job did not require any independent initiative, or a degree of skill to perform his work. Ramirez Dec. at ¶ 16.

Upon information and belief, during the last three years, Defendants have employed at least 15 cashiers/stock clerks similar to Ramirez and at least 10 delivery persons who all like Ramirez were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Ramirez Dec. at ¶ 19. Upon information and belief, during the last six years, Defendants

have employed at least 30 cashiers/stock clerks similar to Ramirez and at least 20 delivery persons who all like Ramirez were paid a salary and worked more than 40 hours a week and more than ten hours a day and were not paid time and one half their regular wage rate for their overtime hours worked and not paid an additional hour of work on days when they worked a spread of more than ten hours. Ramirez Dec. at ¶ 20.

Ramirez knows that others like him were not paid overtime at time and one half and were not paid spread of hours pay by Defendants because he frequently heard other similar employees including but not limited to Victor Martinez (delivery employee), Mike [last name not known] (cashier/stock clerk) and Esmelin Gonzaga (delivery employee), complain that they worked more than 40 hours a week and were not paid overtime and were only paid a weekly salary. Ramirez Dec. at ¶ 21.

During the time period, Ramirez was not specifically notified by Defendants of the regular pay day designated by Defendants, Defendants' name, address and principle place of business and telephone number and my specific pay rate as required by the New York Wage Theft Prevention Act. Ramirez has not been given specific notice of this information to sign and has not signed any such notice. Upon information and belief, the other cashier/stock clerk employees and delivery employees also were not given such notice. Ramirez Dec. at ¶ 23.

### C.     The Collective Action Notice

FLSA § 216(b) has no specific provision for issuing notice to prospective plaintiffs in collective actions.  However, it is well established that district courts have the power to send such a notice to potential plaintiffs.  E.g., Braunstein v. Eastern Photographic Laboratories, Inc. 600 F. 2d 335, 335-36 (2d Cir. 1979); Sbarro, 982 F. Supp. at 261 (citing Hoffman-La Roche,

Inc. v. Sperling, 493 U.S. 165 (1989); Gjurovich, 282 F. Supp. 2d at 104; Trinidad v. Breakaway Courier Systems, Inc., 2007 WL 103073 (January 12, 2007 S.D.N.Y) (Judge Sweet).  It is important to note that, in issuing a notice to potential plaintiffs, the Court does not adjudicate the merits of the claims of either the named or potential plaintiffs, or determine that the potential plaintiffs are in fact similarly situated with the named plaintiff.  As Magistrate Judge Lisa Margaret Smith of the Southern District in Westchester County noted:

> Here, I determine only that notice may be sent to those people who, at this very preliminary stage in the litigation, might be potential plaintiffs.  I am not determining that those being notified "are, in fact, similarly situated" to the Plaintiff, and I make no determination regarding the legal rights and responsibilities of the parties.  . . . Again, the Plaintiff's burden for proving that he is similarly situated to these potential plaintiffs is minimal for this preliminary determination-a determination that can be modified or reversed after discovery is complete.

Gjurovich, 282 F.2d at 105 (citations omitted).

Plaintiff separately submits herewith a proposed Notice of Lawsuit and Opportunity to Join.  This notice comports to the specific requirements exhaustively enumerated by Judge Smith in Gjurovich.  Supra, at 106-109.

**D.    Defendants Should Disclose the Names and Last Known Addresses and Email Addresses of Prospective Plaintiffs and Should Post the Notice Conspicuously**

Only Defendants know the names and addresses of potential plaintiffs in this case.  The Supreme Court has confirmed this Court's inherent authority to require Defendants to disclose that information so that Plaintiffs' counsel can circulate the Notice of Lawsuit and Opportunity to Join.  Hoffman-La Roche, Inc. v. Sperling, 110 S. Ct. 482, 486 (1989).  In addition, Defendants should be ordered to provide this information in both paper and digital format to expedite the distribution of the notices, and the proposed Order submitted herewith so provides.

Plaintiffs' Motion for permission to authorize notice to potential class members is critical because the statute of limitations for claims brought under the Fair Labor Standards Act may not be tolled for a particular plaintiff until he or he files with this Court a "Consent to Join" form. Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129, 1133 (D. Nev. 1999); Partlow v. Jewish Orphans' Home of Southern Cal., Inc., 645 F.2d 757, 760 (9th Cir. 1981) ("It is true that the FLSA statute of limitations continues to run until a valid consent is filed."); Atkins v. General Motors Corp., 701 F.2d 1124, 1130 n. 5 (5th Cir. 1983); Does I thru XXIII v. Advanced Textile Corp., 214 F. 3d 1058, (9th Cir. 2000); Sbarro, 982 F. Supp. at 262; 29 U.S.C. § 216(b).  The implication of the continued running of the statute of limitations is obvious: each day that passes before notice is given causes prejudice to the absent plaintiffs.  The statute of limitations demonstrates not only the need for the distribution of notice to purported class members, but the expediency in which the distribution must occur.

Plaintiffs are not requesting unusual or extraordinary relief, but are requesting relief clearly within the discretion of this Court.  Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 171 (1989).  The United States Supreme Court recognized the need for notice in actions like this and also approved Court intervention and authorization of notice, stating:

> Because trial court involvement in the notice process is inevitable in cases with numerous plaintiffs where written consent is required by statute, it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time. . . .  The court is not limited to waiting passively for objections about the manner in which the consents were obtained. By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative.

Hoffmann-La Roche, 493 U.S. at 171-172 (1989); Sbarro, 982 F. Supp. at 262 ("courts have endorsed the sending of notice early in the proceeding, as a means of facilitating the FLSA's broad remedial purpose and promoting efficient case management."); Cook v. United States, 109

F.R.D. 81, 83 (E.D.N.Y. 1985) ("certainly, it is unlikely that Congress, having created a

procedure for representative action, would have wanted to prevent the class representative from

notifying other members of the class that they had a champion.").

The notice should also be conspicuously posted in the workplace.  Courts in this circuit

routinely grant such requests.  See, e.g., Jacob v. Duane Reade, Inc., 2012 U.S. Dist. Lexis 11053

at *29 (S.D.N.Y. Jan. 26, 2012); Whitehorn v. Wolfgang's Steakhouse, Inc., 767 F. Supp. 2d

445, 449 (S.D.N.Y. 2011) ("Courts routinely approve requests to post notice on employee

bulletin boards and in other common areas, even where potential members will also be notified

by mail."); Moung Su Kim v. Kap Sang Kim, 2010 U.S. Dist LEXIS 72236, 2010 WL 2854463,

at *1 (E.D.N.Y. July 19, 2010).  Thus, the Court should order that notice of this action be posted.

**E.       The Notice Should Cover Employees Who Worked Over the Past Six (6)
Years Because the FLSA Three Year Statute of Limitations Should be
Equitably Tolled by Defendants' Failure to Post Notice and Because Courts
Apply Six Year Notice Period to Reflect the Discovery Purposes of the Notice
Related to the Underlying New York State Class Action Claims Which are
Governed by a Six Year Statute of Limitations**

Preliminary certification of the FLSA opt-in class should be for the entire six-year

limitations period, as set forth by the New York Labor Law, due to Defendants' failure to post

required notices, as set forth by the FLSA, 29 C.F.R. § 516.4.  Equitable tolling may be utilized

by a court where a defendant's conduct "concealed from the plaintiff the existence of the cause

of action."  Cerbone v. Int'l Ladies Garment Workers' Union, 768 F.2d 45, 48 (2d Cir. 1985).

Where employers have failed to post the required notice, courts have held that the statute

of limitations is equitably tolled during the period in which notice was not posted.  See Baba v.

Grand Central Partnership, Inc.,2000 WL 1808971 (S.D.N.Y.), 2000 U.S. Dist. LEXIS 17876

(S.D.N.Y. Dec. 8, 2000); Iglesias-Mendoza v. La Belle Farm, Inc.,239 F.R.D. 363 (S.D.N.Y.

Jan. 29, 2007); Kamens v. Summit Stainless, Inc., 586 F. Supp. 324, 328 (E.D.Pa. 1984).  In

Baba, supra, the court recognized the authority to the effect "that the failure to post the required notice equitably tolls the statute of limitations unless and until an employee has actual notice of his rights." Baba at *2. Similarly, in Iglesias-Mendoza,supra, the court followed Baba and certified the six-year period for plaintiffs' FLSA claim, noting that certification would simplify class notice and that by virtue of the plaintiffs' New York Labor law claims, notice would be sent to all hourly employees who had worked for the defendants over the last six years.

Here, Plaintiffs have alleged in their declarations that Defendants failed to post notices advising Plaintiffs and Defendants' other employees of their right to earn minimum wage and overtime compensation. Martinez Dec. at ¶ 18, Gonzaga Dec. at ¶ 21, Ramirez Dec. at ¶ 18 . As such, the Court should certify the FLSA opt-in period for the entire six-year statute of limitations period applicable to the New York Labor Law claims.

Furthermore, courts regularly order that the FLSA notice cover a six year period to reflect the discovery purposes of the notice related to the underlying New York State class claims. Masson v. Ecolab, 2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. August 17, 2005) (court approved six year period for FLSA Notice to reflect underlying state claims, stating that "approval of this collective action is for purposes of discovery as well as notice"); Guzman v. VLM, Inc., 2007 U.S. Dist. LEXIS 75817 at *18-19 (E.D.N.Y., Mar. 2, 2008)("Given that I can properly exercise supplemental jurisdiction over the NYLL claims arising  out of the policies complained of here, notice to all similarly situated employees who worked for VLM during the six years prior to the filing of this complaint is proper.");Harrington v. Educ. Mgmt. Corp., 2002 U.S. Dist. LEXIS 8823, 2002 WL 1343753, at *2 (S.D.N.Y. June 19, 2002) (authorizing FLSA notice to all similarly situated employees who worked for defendant in New York in past six years due to NYLL claims); Realite v. Ark Restaurants Corp., 7 F. Supp. 2d 303, 308 n. 4 (S.D.N.Y. 1998)

(same); see also Cano v. Four M Food Corp., 2009 U.S. Dist. LEXIS 7780 at *30-31 (E.D.N.Y. Feb. 3, 2009) (same); Wraga v. Marble Lite, Inc., 2006 U.S. Dist. LEXIS 60457, 2006 WL 2443554, at *3 (E.D.N.Y. Aug. 22, 2006)).

Thus, a six year period should apply to the FLSA notice.

## III.   CONCLUSION

The Plaintiffs have shown by their declarations that they are similarly situated with other former and current employees of Defendants. Accordingly, Defendants should be required to post notice of delivery persons and/or cashiers and/or stock clerk employees' right to join this action in a conspicuous location at its office, and Defendants should provide the names and addresses and email addresses and telephone numbers of delivery persons and/or cashiers and/or stock clerk employees' and employees with different titles who have similar duties and other non-managerial, non administrative workers they employed within six years preceding the date of the Complaint, so that notice of this action may be communicated to them. For the foregoing reasons, Plaintiffs respectfully requests that Plaintiffs' Motion be granted.


Dated:  New York, New York
        July 2, 2013


                    LAW OFFICE OF WILLIAM COUDERT RAND

                    s/William C. Rand
                    _____
                    William Coudert Rand, Esq. (WR-7685)
                    *Attorney for Plaintiff*, Individually,
                    and on Behalf of All Other Persons Similarly Situated
                    488 Madison Avenue, Suite 1100
                    New York, New York 10022
                    Tel: (212) 286-1425